We'll proceed to our final case of the day, the Pension Benefit Guaranty Corporation v. Marine LLC. Judges, your honors, I'm sorry. It looks like one of the counsel just dropped off. Let me try to get them rejoined. I don't know if they meant to unmute their phone or something and drop. Give me just a second. Sorry. Just let us know when you're ready. I guess we could have gone on some more with that case, after all. Hello. This is Mr. Houser. I was dropped. All right. Well, we were looking for you, so we're glad you're back. I was certain that the phone call would go on for two hours until it was my turn to talk. Thank you, your honors. We look good now. Okay. And Merrill Boone, are you on the phone? Yes, your honors. Sorry. He's muted. Okay. You've got them muted. Okay. So, can we get underway now with the argument for the case, the last case of the day, Pension Benefit Guaranty Corporation v. Marine LLC and others? Yes. Thank you, your honor. May it please the court. This is Robert Houser on behalf of 50509 Marine and a dozen and a half other entity defendants. We are the appellants, and this is an appeal of a summary judgment. We're here on de novo review. The federal government is powerless to resurrect a corporation which the state has put out of existence for all purposes. That has been the law in the United States as set forth by the United States Supreme Court for almost a century, and there is no contrary authority cited either by the court that we're seeking to have reviewed or by the opposing party. Over in the Seventh Circuit, which is the circuit that speaks for the state of Illinois, in the case of In Re Pier Manor, which is an old case from 1943, the Seventh Circuit acknowledged that in Illinois, an entity in Illinois that had been dissolved for more than seven years prior to the commencement of the proceedings was non-existent. It was dead for all legal purposes. It could neither sue nor be sued. Service of process on it was an impossibility, and even appearance and answer of attorneys purporting to represent that corporation in Illinois were a nullity. All of this matters because my clients, the appellants, were sued in the Southern District of Florida under alternative theories either that they were in a controlled group of corporations with liberty lighting, or alternatively that they were trades or businesses under common control with liberty lighting under a risk. And we established at summary judgment that neither of those propositions are true. Pension Benefit Guarantee Corporation failed to establish that either of those propositions are true, and so we're asking the court to send this back with instructions to enter summary judgment for all of the appellants and against pension benefit. Alternatively, if the court thinks there was an issue of fact, because any issue of fact at all should have been viewed in the light most favorable to us, and frankly, although I don't think it changes the outcome, this district court reviewed almost every fact against us and assumed the worst instead of the best. And on summary judgment against us, that would have been error. The next case that speaks to the existence of corporations is a bankruptcy case from the state of Illinois, In Re Signo Communications. I looked up the judge. He either practiced or was a judge in Illinois for almost 50 years, and he held, citing in rapier manner the Seventh Circuit case, which in turn relies on the United States Supreme Court, when read together the Illinois statutory scheme, continue the existence of a dissolved corporation for five years after it's dissolved. In our case, that would have been in 1992. And then for a period of five years, it is dissolved, so the corporation can wind up its affairs. Counsel? Counsel, I'm sorry. This is Robin Rosenbaum. It seems like there are also some intermediate appellate court decisions, though, that talk about how the corporate survival statute is not absolute, and it may be extended under certain circumstances, most notably public policy or statutory necessity. And that would be more buying through more and mixed finer foods. And also Hamilton's economy says something similar. And in light of that, and in light of the ERISA purposes, which are to protect the interests of employees and their beneficiaries and employee benefit plans, and to have uniformity in the administration of employee benefit plans, why wouldn't it be appropriate to fill in this sort of gap in ERISA with what the district court ultimately wound up doing? Why wouldn't it be appropriate, in other words, when there's no indication one way or the other whether this was reported as having been dissolved to the Pension Benefit Guarantee Corporation in 1992 or at any point in time until 2012, why wouldn't it be appropriate, with those goals in mind, for us to follow what the district court did here, which was basically to say, you know, for our purposes, the corporation ended in 2012? Well, we cited cases from Illinois for the proposition that even equitable principles wouldn't prolong even the technical existence of the corporation. And we go beyond the intermediate appellate courts. The Supreme Court of Illinois also wrote, now I agree that it's a footnote, but it's from the Supreme Court of Illinois, has written that the five-year extension to a corporation's life, granted by Section 12.80, established a fixed endpoint beyond which a corporation ceases to exist. So the highest court in Illinois believes that the corporation ceases to exist, notwithstanding certain equitable principles. And as far as federal concerns... Except, you know, that wasn't really the issue as to whether there could be some kind of equitable exception such as the intermediate appellate courts in Illinois have found to exist. It wasn't, you know, really the point there. I mean, as you note, it was in a footnote. So I'm a little bit reluctant to rely on that as, you know, the be-all and end-all of Illinois legislation. And even if it were... Or, you know, of what the statute means. And even if it were, there's still the problem of, you know, can a state set when the federal government, when PWC under ERISA, can conduct its mandate? You know what I'm saying? The thing that is troubling to me is we're looking for uniformity among all of the states. That's one of the goals of ERISA. And we're also looking to protect the pension benefits of individuals. And so where there's nothing here that's directly on point in ERISA, it seems to me that it might be inconsistent with ERISA and its purposes to allow a corporation, and I'm not saying that your corporation did this necessarily, but just theoretically, to just go ahead and flop off into the night and, you know, there's... And there's no follow-up, but because they filed dissolution papers with the state, you know, that's the end of the corporation. Especially here where we have continued things going on. I mean, until 2012, Mr Wortley is signing things on behalf of the plan and things are continuing to go on. I don't know if you want to address that. Sure. So as to part one of Your Honour's question, and thank you, Congress, for reasons only known to Congress, left the existence of corporations and the phrase corporation, the phrase trade or business, it's all built on an existing body of state. So by definition, that law is going to vary slightly from state to state. In Florida, for example, Judge Reinhart originally thought this might be a Florida corporation. And so in Florida, corporations do almost exist almost forever, at least for some purposes. But Illinois is an old common law jurisdiction, and my guess is that in the 1970s, there were as many common law jurisdictions that held that corporations disappeared entirely as there were Model Business Corporation Act jurisdictions. But either way, the other problem is ERISA gives PBGC a virtual army of remedies that they can use already to try to get around what could be viewed as evasive, right? The implication here is maybe something's done wrong. But Pension Benefit did not choose to argue that something was done wrong here, right? We're only here under the strict liability prong of the statute. So the only thing that matters is whether it was a corporation or a trade or business on a fixed date. We're not arguing fault. But if there were a fault, Your Honor, they have the ability to disregard evasive transactions. They can sue plan administrators for breaching fiduciary duties, and they have an extraordinary statute of limitations to do so. They get extended limitation periods for time of discovery issues. They have a cash haul that lets them bring any cause of action at all. And they have deference. They could have chosen, either in dealing with us or any other entity, to choose a fixed or alternative or even an artificial date of termination that's advantageous to them so that they're within their limitation periods or within their definitions of trade or businesses. For example, it occurred to me, in this case, they could have asked Mr. Wortley to try to reform this corporation so that it would actually exist in their dealings with him, and they didn't do that. But that's something they could have tried to do, or they could have tried to judicially recreate the corporation at a certain time. Now, they still might have the problem of arguing who owns it because under Illinois law, the stock also disappeared no later than 1997, and therefore it would not have belonged to Mr. Wortley. The only thing that would have happened under Shute v. Chambers, another Illinois intermediate appellate case, is that the possessions of the company would pass the show. I'm out of time, so I will reserve for oral argument. Thank you for a rebuttal. Thank you, Your Honors. Good afternoon. My name is Merrill Boone, and I represent the Appellee Pension Benefit Guarantee Corporation, known as PBGC. I'd like to begin by reviewing the circumstances that led us here. From 1990 to 1992, pension plan sponsor Liberty Lighting entered bankruptcy, ceased operations, liquidated, and dissolved. And each of those four events was a reportable event of which Lighting was statutorily required to notify PBGC, and there's no evidence that Lighting or anyone else notified PBGC of any of those events until 2012, when PNC Bank let PBGC know that the plan's account was almost empty. And neither Lighting nor anyone else took any steps to terminate the plan until PBGC did in 2012. So between Lighting's 1992 dissolution and 2012, the plan remained ongoing as Lighting, through Mr. Wortley, amended the plan, filed tax returns for the plan, communicated with the actuary regarding plan benefits, and hired an investment manager for the plan. And now Mr. Wortley, through his 2012 company, seeks to avoid responsibility for the plan by saying that Lighting ceased to exist in 1997, 15 years before PBGC learned of the case. Turning to the law, it's federal because it's a federal statute. It's the ERISA, specifically 29 U.S.C. section 1362, that makes a sponsor's control group jointly and severally liable for a terminated pension plan's unfunded benefit liability. And this court, like others nationwide, and as Judge Rosenbaum suggested, has filled gaps in ERISA with federal common law. In Bradshaw, this court recently reaffirmed that courts have the authority to develop a body of federal common law to govern ERISAs not governed by the act itself, and whether a corporation that has ceased operations and is dissolved can belong to an ERISA control group is an ERISA issue and it is not covered by the statute. And in Horton, this court said that federal common law rules must further ERISA's purposes, and if a pension plan sponsor's existence for control group purposes terminated when it ceased operations and dissolved, entire control groups could escape liability by simply failing to notify PBGC that the sponsor had ceased operations and then dissolving the sponsor, whether or not that happened in this case. And that would be completely contrary to the purposes of ERISA as evidenced by ERISA's provisions for control group liability. Counsel? Yes. I'm sorry. This is Robin Rosenbaum. Go ahead. I was just wondering if you want to respond to opposing counsel's suggestion that if that's the case, if there's an evasiveness problem, that you have other tools in your quiver, I guess, or other arrows in your quiver, that you could go ahead and use in order to gain compliance and to make somebody liable. What is your response to that? Well, no, we really don't. And first of all, I don't recall him making these arguments until the reply brief, even then. So I wonder if any of them are waived. But as far as the evasiveness issue, I think he's referring to 29 U.S.C. 1369, which allows PBGC to go after, to undo, or to treat someone engaging in an evasive transfer as a member of a control group if that evasive transfer occurred within five years before the termination date. So in other words, he's asking us to set a 1992 termination date in 2012 and then try to find evidence of evasive transactions 25 years earlier. That's just not practical. And as far as, I think he mentioned fiduciary breach, what if there is no fiduciary breach? This liability, as far as we know, did not arise because of the fiduciary breach, and that shouldn't foreclose us from pursuing it. Counsel, this is Ted Chalman. Suppose that Wortley had died after his personal bankruptcy. Who would PBGC look to as the planned sponsor in 2012? Well, he clearly could not have owned, I assume his estate would have been resolved by 2012. Right. And so we would be out of luck, frankly, as far as a recovery. Although it's possible that in those circumstances we might have said, well, you know, we can, even though all the evidence is 20 years old, we might try to use a retroactive termination date in that case. So are you saying that a corporation's legal existence is completely irrelevant as to its status as an ERISA sponsor based on federal common law, which really doesn't deal with bankruptcy situations? Okay, well, there's... I'm not saying that corporations... Well, actually, under one of our theories, we do argue that there's basically three alternatives, and one of them is that a sponsor remains a member of a control group with persons it's under common control with, whether or not it's a corporation. But that's only one of the alternatives. Another is that it remains a corporation either under state law or under federal law, under federal common law. Forever? Is there no rule against perpetuity? Is it the life and being of the 193 beneficiaries plus 21 years? No. What's the outside limit? Well, I think you can get a clue from, or I think you can take guidance from the statute, the Illinois statute, actually, which says that a corporation continues to be able to wind up its affairs. And clearly, a pension plan is a very... For five years. What? For five years. No, no, no. That is a very misleading argument that the appellants are making. The five years is a statute of limitations against bringing an action by or against a dissolved corporation. We're not bringing an action by or against a dissolved corporation. But if the Illinois Supreme Court says that the corporation has ceased to exist at the expiration of that five-year winding up period, then what's left to sue? Well, I think that they were speaking of its ability to be sued or sue, and we're not trying to sue Lighting here. The Illinois statute clearly says that a corporation exists to wind up its affairs. But Liberty was the plan's sponsor, was it not? It was. Okay. And so, going back to my hypothetical, if Wortley had died and Liberty Lighting was gone, dissolved, can a plan not have a sponsor at that point? No. It always must have a sponsor. Who is the sponsor? If the company's gone and Wortley's gone in 2012, who would the sponsor be? Well, we'd say the company is not gone. At the very most, it ceased to exist as a corporation. It did not cease to exist altogether. If it ceases to be a corporation, then it's something else. It lasts for what? As long as the life of the last 100 beneficiary? No, no. It exists until it's wound up its affairs, and its affairs include the pension plan, and it winds up the affairs of the pension plan by turning it over to PBGC in 2013. But we've got $6.2 million in unfunded pension plan liability, right? Right. So in 2012, you can't get it out of Liberty because it's gone. Right. Wortley went through bankruptcy. So I guess what? The answer then is you go after the control group. Right, because the statute says that it's the control group as of the termination date that's liable. Why didn't you bring breach? I guess I have Judge Rosenbaum's question too. Why didn't you go after Wortley for a breach of fiduciary duty? Well, I don't see a fiduciary duty breach here, for one thing. Well, he inadequately funded the plan. That's not a breach of fiduciary duty, actually, Your Honor. Every case we handle has an inadequately funded plan. I guess what I'm really asking is at what point does the fund say, okay, we'll dip into our fund and cover the shortfall? Well, we've already done that, actually. The question is can we recover that shortfall from anyone else? Can we recover it? Okay. Right. Okay. Right. This is Beverly Martin. I kind of want to know the back story on this. I mean, is this an unusual problem? I mean, it seems surprising to me that this plan could rock along from 1997 to 2012 without the payouts that were required of it. I mean, do you all run into this problem a lot? Not so much anymore. It does come up. What's somewhat unusual and why it's really a case of first impression is that for an owner to bounce back, as Mr. Wortley did, and have a new set of businesses. I mean, in the length of time, that would not happen very often to me. No, it doesn't happen very often. I mean, again, I don't know the back story, but it seems like to me Mr. Wortley was trying to do the responsible thing by keeping the plan going, whereas if he had gotten better legal advice, he would have terminated it. Well, yes. And I don't know if I can go into Mr. Wortley's means, but we certainly do not see him as being unable to afford good legal advice. Well, I mean, sometimes people think they're getting good legal advice when they're not. Right. Anyway, that's an aside, but I appreciate you. Thank you. I'd like to discuss the trade or business alternative in more detail, if I may. I want to point out that in that case, you can't avoid applying federal common law because trade or business is not defined in ERISA. Trade or business is not a state law concept either, so state law isn't any help. And thus, in citing the Gretzinger case, appellants also are asking you to apply federal common law. And Gretzinger's definition of trade or business was for the purpose of deducting gambling losses from income, and that definition was trade or business was continuous or regular activity for the purpose of income or profit. And that definition might be appropriate federal common law in some cases, but it's not appropriate in all of them. As the Sixth Circuit recently held, or in 2018 held, in PBDC v. Finley, which is cited in our brief, in Finley the Sixth Circuit noted that courts unanimously have refused to apply the Gretzinger definition when doing so would prevent the passive leasing of property to a person under common control from belonging to a control group. Similarly, this court should decline to apply Gretzinger in cases such as this one because doing so would allow control groups to escape liability by failing to provide statutorily required notice of events indicating a risk of planned termination. And the better federal common law… Mr. Booth, could you address that for a minute? I am at a loss to understand why the trustee in bankruptcy of the corporation did not notify PBGC or provide for the fact that it might have a fairly substantial claim against the assets of the bankrupt company. Well, the trustee was the debtor in possession, which was Liberty Lighting, which was run by Mr. Wortley. So, yes, that's a good question. Why didn't he notify us of the bankruptcy, among several other events? Do you have a statutory priority that's akin to tax loans, or is it even stronger than that? It depends. Generally, the underfunding itself has a fairly low priority, unless we already have a tax lien, or a lien, which has been perfected, which we rarely do when bankruptcy comes along. Okay. If he had notified you of bankruptcy in 1992, what would have PBGC done at that point? We would have participated in the bankruptcy. We would have filed a notice of appearance. We would have gotten notice of a bar date for the proof of claims. And we would have also investigated whether the plan should be terminated. And based on what eventually happened, it seems very likely we would have concluded that it should be terminated. And we would have initiated termination, which we may do, even without the sponsor applying for termination. I want to also address, if there's time, the corporation alternative, using federal common law to hold that it was a corporation. Lighting was a corporation in 2012. In Hood, this court said that a dissolved corporation, quote, continues corporate existence for the purpose of winding up its affairs, unquote. Now, that wasn't federal common law itself. It referred to New Jersey law, which, as a footnote in Hood indicates, provides that, quote, a dissolved corporation shall continue its corporate existence, but shall carry on no business except for the purpose of winding up its affairs, unquote. In other words, New Jersey law explicitly provides that a dissolved corporation not only continues its existence, but continues its corporate existence until it has wound up its affairs. Appellants just indicated that Florida corporations also would not cease to exist. So if an Illinois corporation ceases its corporate existence immediately upon dissolution, a case with these facts reaches the opposite results, depending on where the corporation was organized. And I don't think ERISA contemplates such a random result. As you said in Horton and Bradshaw, one of the reasons to apply federal common law is uniformity in the administration of pension plans. And as those in other cases say, that federal common law should be consistent. That federal law should be consistent with the purposes of ERISA. And again, in this case, that means that control groups shouldn't be able to evade liability by failing to provide legally required notice to PBGC of the sponsor's distress and then dissolving the sponsor. And any state law providing that a dissolved corporation immediately ceases to exist, so completely conflicts with ERISA's purposes as to be preempted. And I also want to note that this court has held that another type of business organization, partnerships, would be, the existence of partnerships, would be determined under federal law, federal common law, in the Connors v. Ryan, Ryan's Cole case cited in our brief. Counselor, are you aware of any state corporation law that would recognize the continued existence of the corporation for this long a period of time? Well, I have to admit, I haven't looked into, well, I haven't looked into any of the cases in any other state other than Illinois. But even Illinois, if you look at the statute that we've cited in our brief, there's no limit on the lining up period. And I don't see why PBGC – it's not PBGC's obligation to wind up the corporation. It's the corporation's and its owner's, director's obligation to wind it up. So I don't see why they should benefit from a limit. And if there was a limit, I would say that that too should be preempted, but there isn't a limit anyway. The only limit here is the five-year limit on suing a corporation, which we're not trying to sue a dissolved corporation. Thank you. Is my time up, Your Honors? Ms. Geddes is the timekeeper. Is it up? Your time is aside, sir. Okay. Thank you. Again, Robert Hauser for the appellants. Is the court ready? We are. All right. Thank you. So not only is pension benefit asking you to disregard Illinois' case law on the existence of the corporation, they're also asking you to disregard Illinois' state law on who owns the stock. It is clear from Illinois' intermediate appellate case law that the stock ceases to exist, and instead the possessions of the corporation, if any, pass to the shareholders. So there's another layer of law that they're asking the court to disregard. And I don't concede, I don't believe that the court can hold that state corporation's law is preempted under the authority of Chicago title. And there's certainly no evidence of congressional intent to upset state corporation's law, at least insofar as who owns the stock of a corporation. That has always been a traditional subject of state ownership. Can we talk about the plan as opposed to Illinois' law? So, I mean, you acknowledge the existence of the plan. It exists. Can a plan exist without a sponsor? Yes, and it has to. And the best example, we almost reached the example during my opponent's argument, but a sole proprietorship can own a or can sponsor a defined benefit plan. And in a sole proprietorship, there's no separate corporate form. If the owner passes away, the plan has no sponsor, period. Who terminated this plan in 2012? I mean, there was somebody acting on behalf of the plan to do that. Who was that? It's bizarre. It's really an agreement between Mr. Wortley, who signed as the putative president of Liberty Lighting, after going to considerable effort to warn Pension Benefit that he wasn't really the president, didn't have authority. They entered into a stipulation, which I think is actually dated in 2013, that the plan would terminate on a date certain. But your position is he was not acting as the plan's sponsor when he entered into that agreement? He couldn't. He didn't have authority, and he warned Pension Benefit that he didn't have authority, but they wanted to proceed anyway. So it's a very, very strange procedure that occurred. But evidently, what we characterized it was, to Pension Benefit, was a quit-claim deed. We'll quit-claim whatever we have, but we don't think it's anything. And that was satisfactory to PBGC's counsel at the time, and they signed this very strange agreement to that effect. And it was PBGC that sought out Mr. Wortley to terminate. The district court viewed this as some kind of evidence of acknowledgement that he did sponsor the plan, but I think he was sufficiently clear there's certainly no estoppel against him, given that he warned them through counsel that he didn't think he had authority. So that wouldn't be a basis to enter a summary judgment. It might be an issue of fact if it matters. But again, our position is it doesn't matter because this entity was not a trade or business, and I think it was conceded below that it was not a trade or business. They're not conceding it here, but they conceded it below that Liberty Lighting was no longer a trade or business. In the current court, we also need to show that it's not a corporation, and it's certainly not a corporation under the only entity which is capable of calling it a corporation, and Mr. Wortley was not entitled to own the stock of it under the law of the only entity that was entitled to dictate who owned it. Counsel? Yes, thank you. What would have happened if Mr. Wortley had decided that, you know, that Liberty Lighting is not going to be the plan sponsor anymore back in 1992? He'd be much better off. If he or his lawyers had made sure that pension benefit was involved, and I don't agree that they didn't get notice. We suspect that they got notice, but it's too late these many, many years later to prove it. But it would have been in his benefit, right, because any of the corporations that he owned at the time could have been sued at that time. May I just finish this one answer? You may. Thank you, Your Honor. What would have happened was if Mr. Wortley owned some other entity, they might have been jointly liable for the unfunded benefit or premiums, but then Mr. Wortley went through bankruptcy in 1994, and so whatever those companies had would be presumably devoted to the plan, but Mr. Wortley would be being clear, and today in 2012, there'd be no possibility of bringing in these new entities, which had nothing to do with the 1992 events. And you would be doing something else today, I guess. Perhaps, but thank you for this experience. Thank you for accommodating us by telephone. Oh, well, thank you for doing your case. I found your arguments helpful. Thank you. Thank you, Your Honor. Thank you. I think that concludes our arguments for today, and my colleagues on the panel will reconvene by Zoom shortly, but court is in recess until 11 o'clock tomorrow morning. Thank you, Judge. Thank you, Your Honor.